**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEVINE SELIM o/b/o R.S.<br><br>       Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Civil Action No. 14-06012 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court upon the appeal of Nevine Selim o/b/o R.S. ("Plaintiff") from the final determination by Administrative Law Judge ("ALJ") Hilton R. Miller upholding the final decision of the Commissioner denying Plaintiff's application for Supplemental Security Income Benefits ("SSI") on behalf of her daughter under the Social Security Act (the "Act"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). After reviewing the submissions of both parties, for the following reasons, the final decision of the Commissioner is **affirmed**.

## I.   BACKGROUND

### A.   Procedural History

On March 7, 2011, Plaintiff Nevine Selim filed an application on behalf of her daughter, R.S., for child's SSI under Title XVI of the Act. In her application, she alleged disability due to Crohn's disease with an onset date of August 8, 2010. (R. at 130-134, 81.) On July 28, 2011, the Social Security Administration ("SSA") denied her application, indicating that though R.S. "does

have a stomach problem," it did not constitute a "marked and severe functional limitation[ ]." (R. at 81-82.) Plaintiff requested reconsideration and her application was again denied on January 13, 2012. (R. 87-89.) On January 18, 2012, Plaintiff filed a request for hearing. A hearing was held before ALJ Hilton R. Miller on September 6, 2012. (R. at 13.) On November 7, 2012, ALJ Miller issued a decision finding that R.S. is not disabled. (R. 10.) Plaintiff requested review of the ALJ's decision by the Appeals Council on January 10, 2013. (R. at 7.) On July 23, 2014, the Appeals Council denied Plaintiff's request for review, thereby affirming the decision of the ALJ as the Commissioner's final decision. (R. at 2-6.) On September 6, 2014, Plaintiff commenced the instant action pursuant to 42 U.S.C. §§ 405(g) and/or 1383(c). (Compl. at 1.)

      B.    <u>Factual History</u>

         1. <u>R.S.'s Testimony</u>

    At the time of his hearing, R.S. was fourteen years old and in eighth grade. (R. at 33.) She had been home schooled for two years, starting in sixth grade. (R. at 42.) She testified that she began home schooling because she finds it difficult to walk, sit through class, and stay awake during the day due to tiredness and lack of focus. (R. at 36.) She also testified that, as a result of daily stomach pain and knee pain, she is unable to attend school, participate in hobbies, eat a number of foods, play sports, "walk around" with her friends, or focus during social interactions or movies. (R. 33-41.) She testified that she is always in pain, including daily stomach pain that "doesn't go away." At least once a week, she has "flare ups" that cause cramping that is "a lot worse" and pain that causes her to double over and cry. (R. at 36, 39-40.) She also testified that her knees and back always hurt, especially when she walks, so she "really can't move that much." (R. at 37- 38.) She noted that when she walks to the park with her friends, she "usually stop[s] and sit[s] on stairs" because her knees hurt. (R. at 37.)

2. <u>Parents' testimony</u>

R.S.'s mother, the Plaintiff in this case, testified that R.S. cannot attend school because she is always tired, crying, and has leg and back pain. (R. at 44.) She indicated that sometimes the medication does not help her daughter feel better. She attributed R.S.'s stomach pain, back pain, leg pain, throat pain, and lack of focus to the Crohn's Disease. (R. at 45-46.) Plaintiff also testified that R.S. does not want to interact with other people; she stays alone in bed and is "nervous." (R. at 45.) She also stated that her daughter does not understand what she is being taught in school because she is tired and goes to sleep while her teacher is there. (R. at 48.) Plaintiff also testified that R.S. sometimes wakes up in the middle of the night with diarrhea and severe pain. (R. at 47.) R.S.'s father also testified. He supported Plaintiff's testimony that none of the medications R.S. has tried have been helpful. (R. at 49.) He described his daughter as scared and in pain, which he stated worsens when she eats. (R. at 50.)

3. <u>Medical Evidence</u>

On August 9, 2010, an examination of R.S. indicated that there was abnormal mural thickening of the cecum and that the terminal ileum was "suspicious for some type of inflammatory bowel disease or colitis/enteritis." (R. at 275.) R.S. presented symptoms of abdominal pain, muscle weakness, nausea or vomiting, fever, weight loss, and fatigue. (R. at 259.) On August 12, 2010, R.S. underwent an esophagogastroduodenoscopy ("EGD") with biopsy, which showed chronic gastritis, duodenitis, a small EG junction ulcer, and multiple superficial esophageal ulcers. (R. at 277, 282.)

On August 19, 2010, Dr. Mimi Ton, a pediatric gastroenterologist, evaluated R.S. for her recent Crohn's disease diagnosis, stemming from a CT scan and an upper endoscopy. (R. at 359, 327.) Dr. Ton's notes indicate mouth sores, headaches, weight loss, a leg rash, knee pain, fever,

3

paleness, and anemia. (R. at 343.) Her report indicates that R.S.'s symptomatology included "decreased oral intake, recurrent emesis, diarrhea, and fever." (R. at 327.) Her records also indicate that R.S.'s blood work was positive for anemia and showed elevated inflammatory markers. (R. at 327.) At the time of Dr. Ton's exam, R.S. was experiencing "midepigastric pain" and abnormal bowel movements. (R. at 327.) Dr. Ton observed that her weight was below the 3rd percentile and her height was in the 10th percentile. (R. at 327.) R.S. appeared tired and complained of stomach pain. (R. at 327.)

On October 29, 2010, Dr. Ton saw R.S. for a follow-up. Dr. Ton noted that R.S. had discontinued her medication, despite the doctor's instructions to continue it. (R. at 325.) Also, Dr. Ton indicated that though R.S. was experiencing some nausea, her appetite was good, she ate a variety of foods, and she denied experiencing abdominal pain. (R. at 325.) Further, she stated that R.S. was not experiencing any symptoms at night. (R. at 325.) She advised R.S. and her parents that she should continue taking Prednisone and Pentasa. She also advised that she should start taking Metronidazole again, continue a lactose- and juice-free diet, and come back in one month. (R. at 325.)

R.S.'s next visit was December 16, 2010. Dr. Ton indicated that R.S. had "been well" since her last visit, "except for an episode of abdominal pain and vomiting while at school." (R. at 323.) She noted that R.S.'s bowel movements were normal and that her appetite and energy level were good. (R. at 323.) She also indicated that R.S. was experiencing "fatigue, leg pain with exertion only, [and] eye pain." R.S. denied any abdominal pain. (R. at 323.) She also adjusted R.S.'s medication. (R. at 323.)

On March 2, 2011, a doctor with the Bayonne Board of Education requested information about R.S.'s Crohn's disease, stating that he is "not clear about . . . the symptomatology,

specifically" and requesting "insight" to help him gain "a clear picture of why [R.S.] . . .has not been able to attend school." (R. at 322.) On March 3, 2011, Dr. Ton provided a report to Dr. Eltesemah, R.S.'s primary care physician, indicating that R.S. "complains of left-sided abdominal pain, decreased appetite, fatigue, fevers, headaches, and visual problems." (R. at 321.) On April 11, 2011, Dr. Eltesemah provided a report to the Department of Labor and Workforce Development that indicated that R.S. was experiencing "bouts of diarrhea [and] abdominal pain." (R. at 318.)

On January 17, 2012, Dr. Ton filled out a form provided by the Department of Labor and Workforce Development. (R. at 359-362.) On the form, she indicated that she saw R.S. every one to three months from August 19, 2010 until December 20, 2011. (R. at 360). She noted that in August 2010, R.S. presented with ulcers, erythema nodosum, and abdominal pain. (R. at 360.) She also stated that the results from R.S.'s EDG and colonoscopy were positive for esophagitis and right-sided colitis consistent with Crohn's. (R. at 360.) She indicated that R.S. had limitations with respect to lifting and standing and/or walking; she would only be able to lift and carry ten pounds and stand and/or walk for up to six hours per day. (R. at 361.) She found no limitation with respect to her ability to sit, push and/or pull, or do "other" tasks. (R. at 361.) Finally, she stated that R.S.'s ability to do work-related activities would be limited "if her Crohn's flares" because of the "abdominal pain, joint aches, diarrhea, poor appetite, back pain, and fatigue." (R. at 361.)

The balance of her medical records describe continued Crohn's symptoms, including nausea, diarrhea, and knee pain. (R. at 275-381.)

4. <u>Psychological evaluation</u>

On July 13, 2011, R.S. presented for a psychological evaluation with Dr. Jennifer C. Figurelli, PhD. (R. at 329.) Dr. Figurelli's report indicates that R.S. told her "she was still

experiencing some pain and discomfort." (R. at 330.) According to Dr. Figurelli, "when feeling good, [R.S.] takes a shower, eats, brushes her teeth and gets dressed."(R. at 330.) Her report indicates that R.S. watches television, goes on the computer to access Facebook and games, sees movies with friends, and visits with her friends. (R. at 330.) When she is in pain, she sits on the couch, sleeps until noon, and does not want to eat. (R. at 330-331.) Her mood and affect were appropriate, as was her dress and her awareness of her surroundings. (R. at 331.) She told Dr. Figurelli that she likes school, passed all her subjects, and had been sleeping less during the day. (R. at 331.) Dr. Figurelli noted "a concentration problem." (R. at 331.) Her report indicated no psychological symptoms. (R. at 331.)

     5. Plaintiff's Function Report

     On March 7, 2011, Plaintiff filled out a function report with respect to R.S. (R. at 149-158.) On the function report, she indicated that R.S.'s daily activities are limited because "she is homeschooled." (R. at 152.) According to Plaintiff, R.S.'s ability to communicate is not limited, nor "is there any limitation in [her] progress in understanding and using what she has learned." (R. at 153.) She indicated that R.S.'s abilities to walk, run, dance, swim, drive a car, ride a bike, throw a ball, jump rope, and play sports are limited. (R. at 153.) She also asserts that R.S.'s Crohn's disease affects her social activities because she is unable to play team sports and that "she gets nervous due to her condition and it sometimes affects her behavior with other people." (R. at 154.) However, she indicated that she has friends her own age, can make new friends, and generally gets along with her family, adults, and her teachers. (R. at 154.) Plaintiff indicates that R.S.'s ability to take care of her personal needs and safety is not limited, nor is her ability to pay attention and stick with a task. (R. at 155-156.)

6. <u>Teacher's Report</u>

On March 30, 2011, Barbara Hass, R.S.'s teacher, filled out a "Teacher Questionnaire" from the Department of Labor and Workforce Development. (R. at 185-196.) Ms. Hass indicated that she had known R.S. since September 2010 and saw her once or twice every two weeks. (R. at 189.) She stated that she was teaching R.S math, social studies, language arts, reading, and science. (R. at 189.) At the time Ms. Hass completed the form, R.S. was in sixth grade, an appropriate grade level for her age, needed no special education services, and read, wrote, and did math at an appropriate grade level. (R. at 189.) Though she describes R.S. as "absent with sickness most of the time," R.S. was progressing appropriately in school, moving on to seventh grade the next year. (R. at 189.)

With respect to "acquiring and using information," Ms. Hass indicated that there were "no problems observed in this domain [and] functioning appears age-appropriate." (R. at 190.) This means that Ms. Whitney observed that R.S. had no problems with the following:

> (1) Comprehending oral instructions, (2) understanding school and content vocabulary, (3) reading and comprehending written material, (4) comprehending and doing math problems, (5) understanding and participating in class discussions, (6) providing organized oral explanations and adequate descriptions, (7) expressing ideas in written form, (8) learning new material, (9) recalling and applying previously learned material, [or] (10) applying problem-solving skills in class discussions.

(R. at 190.)

With respect to "attending and completing tasks," Ms. Hass indicated that she observed that R.S. had no problems with the tasks set forth below:

> (1) Paying attention when spoken to directly, (2) sustaining attention during play/sports activities, (3) focusing long enough to finish assigned activity or task, (4) refocusing to task when necessary, (5) carrying out single-step instructions, (6) carrying out multi-step instructions, (7) waiting to take turns, (8) changing from one activity to another without being disruptive, (9) organizing own things or school materials, (10) completing class/homework assignments, (11) completing

7

work accurately without careless mistakes, (12) working without distracting self or others, or (13) working at reasonable pace/finishing on time.

(R. at 191.)

Ms. Hass further reported that R.S. had no problems in the domain of interacting and relating with others. That is, she indicated that she did not observe R.S. having a problem with the following:

> (1) Playing cooperatively with other children, (2) making and keeping friends, (3) seeking attention appropriately, (4) expressing anger appropriately, (5) asking permission appropriately, (6) following rules. . . (7) respecting/obeying adults in authority, (8) relating experiences and telling stories, (9) using language appropriate to the situation and listener, (10) introducing and maintain relevant and appropriate topics of conversation, (11) taking turns in a conversation, (12) interpreting meaning of facial expression, body language, hints, [and] sarcasm, [or] (13) using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation.

(R. at 192.) Ms. Hass also observed no problems in R.S.'s "moving about and manipulating objects" or in "caring for . . . herself." (R. at 193-194.)

With respect to R.S.'s medical conditions and physical well-being, Ms. Hass indicated that she misses school frequently due to illness. (R. at 195.) She reported that though she instructed R.S. at home, R.S. was still missing eight or nine days out of ten. (R. at 195.) She further reported that R.S. "has multiple pains throughout her body: stomach, back, legs, [and] head" and that "these pains prevent her from having home instruction." (R. at 195.) According to Ms. Hass, R.S. "sleeps most of the time to escape from the pain . . . spends much of the time in the bathroom[,] then taking medication[,] then curling up in a blanket on the couch." (R. at 195.) She additionally commented that R.S. was "worse now in March 2011 than when [she] began home instruction in September 2010" and that "she is very behind in her school work." (R. at 196.)

8. <u>Disability Determination Services Physicians</u>

Dr. Samuel Kaye and Dr. Katherine Azaro each reviewed R.S.'s records and opined regarding her condition. (R. at 52-58, R. at 70-78. ) Dr. Kaye indicated that, based on his review of R.S.'s records available on April 28, 2011, her diagnosis of Crohn's disease was "severe." (R. at 55.) He also found that she had marked limitation in the "health and physical well-being" domain because "she has many episodes of abdominal pain and diarrhea." (R. at 56.) However, he did not find any limitation in any other domain. (R. at 56.) As such, he found that her impairment did not functionally equal the listings limitation and that she is not disabled. (R. at 56, 57.)

Upon Plaintiff's request for reconsideration, Dr. Azaro reviewed Plaintiff's records available on January 13, 2012. (R. at 70-73.) Dr. Azaro affirmed Dr. Kaye's opinion that R.S.'s Crohn's disease was severe. (R. at 74.) She also agreed that R.S. had marked limitation in the "health and physical well-being domain," but noted that R.S.'s last visit for abdominal pain and diarrhea had been several months earlier. (R. at 75.) Like Dr. Kaye, Dr. Azaro found no limitations in any other domain. (R. at 74-75.)

## II.   STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be less than a preponderance." <u>Woody v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable person might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered substantial. For instance,

> [a] single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created by
> countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of
> evidence (e.g. that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v.

Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to

support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290

(3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart,

364 F.3d 501, 503 (3d Cir. 2004). It does not matter if this Court "acting de novo might have

reached a different conclusion" than the Commissioner. Monsour Med. Ctr. V. Heckler, 806 F.2d

1185, 1190-91 (3d Cir. 1986) (citing Hunter Douglas, Inc. v. Nat'l Labor Relations Bd., 804 F.2d

808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182

(3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must "review

the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing

Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)). In doing so, the Court "must 'take into account

whatever in the record fairly detracts from its weight.'" Id. (citing Willibanks v. Sec'y of Health

& Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

A court must further assess whether the ALJ, when confronted with conflicting evidence,

"adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence."

Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d

581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was discredited or rejected,

the Court is not permitted to determine whether the evidence was discredited or simply ignored.

See Burnett v. Comm'r of Soc. Sec, 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## III.    APPLICABLE LAW

A claimant bears the burden of proving through objective medical evidence that she is disabled. 20 C.F.R. § 416.912(a). "An individual shall not be considered to be under a disability unless [s]he furnishes such medical and other evidence of the existence thereof as the [Commissioner] may require." 42 U.S.C. § 423(d)(5)(A).

A child's eligibility for disability benefits is governed by 20 C.F.R. § 416.924. To prove that she is disabled, a child must show that (1) she is not engaged in substantial gainful activity, (2) she had a severe medically-determinable impairment, and (3) her impairment "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a)-(d).

With respect to functional equivalence, the Commissioner considers six "domains" that take into account the way a child performs her activities compared to other children her age. 20 C.F.R. 416.926a(b)(1). These domains, as defined by the regulation, are "acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being." 20 C.F.R. § 416.924a(b)(1)(i)-(vi). The Commissioner considers an impairment to be "of listing-level severity" if a child has "'marked' limitations in two of the domains in paragraph (b)(1), or an 'extreme' limitation in one domain." 20 C.F.R. § 416.924a(d). The Commissioner finds a "marked" limitation in situations where a child's impairment "interferes seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.924a(e)(2). An "extreme" limitation occurs when a child's impairment "interferes very seriously with [her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.924a(e)(3).

In the "acquiring and using information" domain, the Commissioner considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.924a(g) With respect to "attending and completing tasks," the Commissioner considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the ease with which you change them." 20 C.F.R. § 416.924a(h). In the "interacting and relating with others" domain, the Commission considers "how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.924a(i). The Commissioner considers "how you move your body from one place to another and how you move and manipulate things" in the "moving about and manipulating objects" domain. 20 C.F.R. § 416.924a(j). The Commissioner determines "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area. 20 C.F.R. § 416.924a(k). The "health and physical well-being" domain is characterized by "the cumulative effects of physical or mental impairments and their associated treatments or therapies." 20 C.F.R. § 416.924a(l).

## IV.  DISCUSSION

Plaintiff argues that the ALJ should have found that R.S. "suffers marked limitations in attending and completing tasks and acquiring and using information." (Pl. Br. at 11.) Plaintiff contends that the ALJ improperly "reject[ed] the only two meaningful sources contained in our record" and should have given Dr. Ton's opinion more weight as R.S.'s treating physician. (Pl. Br.

12

at 7, 9.) Further, Plaintiff argues that the ALJ improperly rejected Ms. Hass's assessment of R.S. (Pl. Br. at 10.) The Court addresses each argument in turn.

A. Substantial evidence in the record supports the ALJ's determination that R.S. did not suffer marked limitations in attending and completing tasks.

In considering whether R.S. suffered marked limitations in the "attending and completing tasks" domain, the ALJ indicates that he considered the Plaintiff's function report, the claimant's testimony at the hearing, the claimant's statements to medical professionals, and the opinions of Dr. Kaye and Dr. Azaro. (R. at 23.) Dr. Kaye and Dr. Azaro each indicated that R.S. had no limitation in this domain based on their own examinations of R.S.'s medical evidence, including the records and form from Dr. Ton, as well as her teacher's opinion and her mother's opinion. (R. at 56, 74.) Further, Plaintiff indicated that her daughter had no limitations in paying attention and sticking with a task. (R. at 156.) Thus, this Court finds that substantial evidence in the record supports the ALJ's determination that R.S. had "less than marked limitation in attending and completing tasks." (R. at 23.)

1. Dr. Ton

Plaintiff first argues that the ALJ erred by not considering Dr. Ton's opinion in determining whether R.S. had any limitations in this domain. Plaintiff states that the ALJ rejected Dr. Ton's opinion "for the manner in which it was delivered to the Commissioner." (Pl. Br. at 7-8.) The Court finds that the ALJ did not improperly reject Dr. Ton's opinion; rather, he indicated that he gave Dr. Ton's opinion "little or no weight" because she does not address whether R.S. had any issues with attending and completing tasks, "as directed by the Regulations." (R. at 21.) The ALJ could not have given Dr. Ton's opinion more weight in this domain because she did not provide any opinion as to R.S.'s ability to focus and maintain her attention or how well she begins, carries through, and finishes activities. 20 C.F.R. § 416.924a(h). Under the Regulation, adolescents

13

should be able to pay attention to increasingly longer presentations and discussions, maintain [their] concentration while reading textbooks, and independently plan and complete long-range academic projects . . ., be able to organize [their] materials and plan their time in order to complete school tasks and assignments . . ., and be able to maintain [their] attention on a task for extended periods of time, and not be unduly distracted by [their] peers or unduly distracting to them in a school or work setting.

20 C.F.R. § 416.924a(h)(2)(v). The regulation also provides examples that may constitute

"limited functioning in attending and completing tasks, stating that children's functioning

in this domain may be considered limited if:

(i) [They] are easily startled, distracted, or overreactive to sounds, sights, movements, or touch. (ii) [They] are slow to focus on, or fail to complete activities of interest to [them] . . . (iii) [They] repeatedly become sidetracked from [their] activities or [they] frequently interrupt others. (iv) [They] are easily frustrated and give up on tasks, including ones [they] are capable of completing, [or] (v) [They] require extra supervision to keep you engaged in an activity.

20 C.F.R. § 416.924a(h)(3)(i)-(v). Dr. Ton did not address any of these considerations

anywhere in the record.

Plaintiff argues that a "treating physician's opinion cannot be rejected unless the ALJ

points to other medical evidence of record and it is an error of law to reject the treating physician's

opinion without adequate medical contradiction." (Pl. Br. at 8.) Plaintiff cites four cases to attempt

to support this proposition; however, none apply to this situation. (Pl. Br. at 8.) In each of these

cases, the treating physicians provided medical evidence that spoke to whether the claimant had

any limitations. See Allen v. Bowen, 881 F.2d 37 (3d Cir. 1989); Frankenfield v. Bowen, 861 F.2d

405 (3d Cir. 1988); Rocco v. Heckler, 826 F.2d 1348 (3d Cir. 1987); Ferguson v. Schweiker, 765

F.2d 31 (3d Cir. 1985). Rossi v. Califano, 602 F.2d 55 (3d Cir. 1979); Wallace v. Sec'y of Health

& Human Servs., 722 F.2d 1150 (3d Cir. 1983). In this case, Dr. Ton did not provide an opinion

relevant to a disability determination. She made no reference to any limitations relevant to the

ALJ's inquiry; she indicated only that R.S.'s ability to lift and carry is limited to ten pounds, that

14

her ability to stand and/or walk is limited to six hours per day, and that "if her Crohn's disease flares up" her "ability to do work-related activities" would be limited. (R. at 361.) None of these conclusions about R.S.'s limitations are relevant to an analysis of a child's disability within the domains. Therefore, substantial evidence in the record supports the conclusion that the ALJ properly weighed Dr. Ton's opinion.

    2. Ms. Hass

The Plaintiff next argues that the ALJ "rejects the handwritten report – on Social Security approved forms – that [R.S.'s] symptoms regularly affected her ability to acquire information and to complete tasks because [R.S.] herself never told a doctor that those symptoms affected her home schooling." (Pl. Br. at 10.) This is a mischaracterization of the ALJ's decision to give little weight to Ms. Hass's statements. The ALJ explicitly stated that he "gives little weight to Ms. Hass's statement because the objective medical evidence does not support her assertions." (R. at 19.) This is appropriate; when defining a marked or an extreme limitation, the Commissioner "will consider all the relevant information . . . including . . . the descriptions we have about [the child's] functioning from [her] parents, teachers, and other people who know" her. 20 C.F.R. § 416.924a(e). The ALJ did consider the teacher's opinion, and found that it was not consistent with the available objective medical evidence. There is no requirement that he give a teacher's assessment any weight.

Further, Ms. Hass's opinion is somewhat contradictory. On the form she filled out in March of 2011, she indicates that R.S. was in sixth grade, consistent with her age, and was instructed in reading, math, and written language at a sixth grade level. (R. at 189.) Though her academic progress was age-appropriate, Ms. Hass states that R.S. is "very behind in her schoolwork." (R. at

196.) Her appropriate progress is further supported by the fact that she continued on to seventh grade the next year. (R. at 331.)

Finally, Ms. Hass's opinion supports the ALJ's finding that R.S. has less than marked limitations in attending and completing tasks. Ms. Hass indicated that she did not observe any problems in this domain and that R.S.'s "functioning appears age-appropriate." (R. at 191.) Though she had opportunity to indicate on the form that R.S. had even a slight problem with a number of attention-related tasks, Ms. Hass's answer on the form indicated that R.S. had no problem with paying attention when spoken to directly, sustaining attention during activities, focusing long enough to finish an assigned activity or task, refocusing on tasks, carrying out instructions, waiting to take turns, changing activities, organizing her possessions, completing class and homework assignments, completing work accurately, working without distraction, or working at a reasonable pace and finishing on time. (R. at 191.) R.S.'s teacher did not indicate even a slight problem in any of the form's thirteen activities relating to attending and completing tasks. (R. at 191.) The ALJ's decision to give "little weight" to Ms. Hass's opinion is supported by substantial evidence in the record.

B. Substantial evidence in the record supports the ALJ's determination that R.S. did not suffer marked limitations in acquiring and using information.

In considering whether R.S. suffered marked limitations in the "acquiring and using information" domain, the ALJ indicates that he considered Ms. Hass's assessment, Plaintiff's function report, the claimant's statements to medical professionals, medical evidence, and the opinions of Dr. Kaye and Dr. Azaro. (R. at 22.) Dr. Kaye and Dr. Azaro each indicated that R.S. had no limitation in this domain based on their own examinations of R.S.'s medical evidence, including the information received from Dr. Ton, as well as her teacher's opinion and her mother's opinion. (R. at 56, 74.) Additionally, R.S.'s mother indicated that she is not limited in this domain.

(R. at 153.) This Court finds that substantial evidence in the record supports the ALJ's determination that R.S. had "less than marked limitation in acquiring and using information." (R. at 22.)

Plaintiff again argues that the ALJ erred by not considering Dr. Ton's opinion in determining whether R.S. had any limitations in this domain. Again, the Court finds that the ALJ did not improperly reject Dr. Ton's opinion, because Dr. Ton did not provide an opinion that is relevant to the ALJ's inquiry. The ALJ could not have given Dr. Ton's opinion more weight in this domain because she did not provide any opinion as to R.S.'s ability to acquire or learn information, or how well she uses the information she acquires. 20 C.F.R. § 416.924a(g). Under the Regulation, adolescents

> should continue to demonstrate what [they] have learned in academic assignments. . .,be able to use what [they] have learned in daily living situations without assistance . . ., be able to comprehend and express both simple and complex ideas, using increasingly complex language . . . in learning and daily living situations . . ., [and] be able to apply these skills in a practical way that will help [them] enter the workplace after [they] finish school.

20 C.F.R. § 416.924a(g)(2)(v). The Regulation also provides examples that may constitute "limited functioning in acquiring and using information," stating that children's functioning in this domain may be considered limited if:

> (i) [They] do not demonstrate understanding of words about space, size, or time. . . (ii) [They] cannot rhyme words or the sounds in words. (iii) [They] have difficulty recalling important things [they] learned in school yesterday. (iv) [They] have difficulty solving mathematics questions or computing arithmetic answers, [or] (v) [They] talk only in short, simple sentences and have difficulty explaining [what] they mean.

20 C.F.R. § 416.924a(g)(3)(i)-(v). Dr. Ton did not address any of these considerations anywhere in the record, and so she provides no support for Plaintiff's claim that R.S. suffers a limitation in this area. Though she provides evidence of R.S.'s symptoms, she

provides no opinion about their effect on this domain. The Court finds that there is substantial evidence in the record to indicate that the ALJ properly weighed Dr. Ton's opinion.

The Plaintiff again argues that the ALJ's decision to give little weight to Ms. Hass's opinion was erroneous. (Pl. Br. at 10.) For the same reasons as in the previous discussion of Ms. Hass's report, this Court does not agree. Ms. Hass's opinion supports the ALJ's finding that R.S. has less than marked limitations in acquiring and using information. The form Ms. Hass filled out indicates that "no problems [were] observed in this domain, [and that] functioning appears age appropriate." (R. at 190.) Though she had opportunity to indicate on the form that R.S. had even a slight problem with a number of tasks related to learning, Ms. Hass's answers on the form indicated that R.S. had no problem with comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying previously learned material, or applying problem-solving skills in class discussions. (R. at 190.) R.S.'s teacher did not indicate any problems, even slight ones, in any of the form's ten activities relating to acquiring and using information. (R. at 190.) As such, the ALJ's decision to give "little weight" to Ms. Hass's opinion is supported by substantial evidence in the record.

## V.    CONCLUSION

For the foregoing reasons, the decisions of the Commissioner and the ALJ are **affirmed**. An appropriate order follows this Opinion.

DATED: _21_ of July, 2015.

JOSÉ L. LINARES
U.S. DISTRICT JUDGE